UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL W. THATCHER, JR.,

    Plaintiff,

v.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION, et al.,

    Defendants.

Case No. 1:12-cv-470

Weber, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Paul W. Thatcher, Jr. initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 against a multitude of Defendants for violations of his civil rights that allegedly occurred while he was incarcerated at the Lebanon Correctional Institution ("LeCI"). (Doc. 3). Pursuant to two separate Reports and Recommendations ("R&Rs") (Docs. 8, 25), both of which were adopted by the presiding district judge (Docs. 31, 46), Plaintiff's claims against fourteen of the eighteen originally-named Defendants were dismissed. Only Plaintiff's claim that Dr. James M. McWeeney, M.D., former LeCI Medical Director, exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment, remains pending. This case is now before the Court on Defendant McWeeney's motion for summary judgment, (Doc. 54), as well as Defendant McWeeney's recently filed motion to dismiss for failure to prosecute. (Doc. 59). For the reasons set forth below, the undersigned recommends that Defendant McWeeney's motion for summary judgment be granted, and that the

motion to dismiss be denied as moot.

**I. Background**

Plaintiff is a prisoner of the State of Ohio, formerly incarcerated at LeCI in Lebanon, Ohio, but currently incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio. Defendant James M. McWeeney, M.D., is the former Medical Director at LeCI.

Plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and filed the complaint in this matter on July 5, 2012. (Docs. 2, 3). Plaintiff named as defendants eighteen individuals employed at LeCI as supervisors, administrators, food service coordinators, or medical staff. (Doc. 1, Complaint). On July 5, 2012, the Court issued an R&R liberally construing Plaintiff's complaint as stating a claim for relief against defendants Dr. McWeeney, Dr. DesMarais, and Dr. O. Cataldi, based on a theory of deliberate indifference to Plaintiff's serious medical needs. (Doc. 8). The Court's July 5, 2012 R&R recommended dismissal of Plaintiff's claims against the remaining defendants for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e). (Doc. 8). On November 13, 2012, the Court issued a second R&R, recommending that Defendant DesMarais's motion to dismiss be granted, and that Defendant Cataldi also be dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915(e). (Doc. 25).

Seeking relief against the lone remaining Defendant, Dr. McWeeney, Plaintiff alleges "[i]nap[p]ropriate medical care as well as [i]nap[p]ropriate supervision" amounting to "cruel and unusual punishment" after he was injured on February 24, 2011 from a fall "in the cooler in the Butcher Shop while doing [his] job." (Doc. 1, Complaint,

2

at 5, 7). Plaintiff alleges that he suffered a hernia and "pulled something in [his] lower back" from the fall, but was not sent "to medical to be checked out [and] had to continue to do [his] job." (*Id.* at 5). Plaintiff contends that he was eventually examined by Defendant McWeeney, who allegedly told Plaintiff that he had "a hernia in a[n] odd place, but there was nothing [the doctor] could do to help." (*Id.* at 6). Defendant McWeeney did not prescribe any pain medication to Plaintiff or place any restrictions on Plaintiff's activities, and did not order that Plaintiff be assigned to a bottom bunk or be given a "lay-in." (*Id.*). Instead, Dr. McWeeney instructed Plaintiff "to take it easy." (*Id.*). Following his appointment with Dr. McWeeney, Plaintiff alleges that he was unable to discuss the "matter at hand with Dr. McWeeney" because others refused to talk to him; he was eventually told that another staff member was "over-riding all medical decisions." (*Id.*). Plaintiff further alleges that he was forced to continue working from February 24, 2011, the date he was injured, until March 10, 2011, when management "decided to lay [Plaintiff] in until they got a Doctor's statement." (*Id.* at 7). Plaintiff remained at his block until May 18, 2011. (*Id.*). Plaintiff attests to his belief that his injuries were made worse "by having to climb up in the top bunk, and working every day since I got injured, as well as having to lift boxes from 10 lbs. up to 50 lbs." (*Id.*). Plaintiff alleges that Defendant McWeeney resigned "on or about March 22, 2011," and that Defendant McWeeney's replacement did not examine Plaintiff before sending him back to work on May 19, 2011. (*Id.*).

Plaintiff's complaint asserts that he complied with the prison's three-step grievance procedure prior to filing suit, by filing an informal complaint, a grievance to the Institutional Inspector, and last, an appeal to the Chief Inspector. (*Id.* at 3). Plaintiff

3

seeks a total of 4.7 million dollars in damages against Defendant McWeeney solely in his individual capacity. (*Id.* at 8). Plaintiff also generally requests that "disciplinary steps" be taken. (*Id.*).

Defendant McWeeney argues that he is entitled to summary judgment under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because Plaintiff failed to properly exhaust his administrative remedies within the prison grievance system as established by Ohio Administrative Code § 5120-9-31. (Doc 54 at 7).

**II.     Analysis**

**A. Summary Judgment Standard**

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts – in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment – rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that the facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in

4

dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-87 (citation omitted). It is the plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007)).

5

**B. Defendant's Motion for Summary Judgment**

**1. The PLRA's Exhaustion Requirement**

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Porter v. Nussle*, the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1 (1991)).

It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 204 (2007). The PLRA requires "proper exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 88-90 (2002) (emphasis added). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance. That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82. If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a)); see also *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). "Exhaustion may not be completed after a federal

complaint has been filed." *Hopkins*, 84 F. App'x at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code 5120-9-31(K) (2013) (West). All inmates and staff members receive a written explanation of the grievance system and instructions for its use. § 5120-9-31(C).

The first step of the grievance procedure allows inmates to submit an informal complaint to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. OAC § 5120-9-31(K)(1).

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. § 5120-9-31(K)(2). Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. OAC § 5120-9-31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of the Inspector of Institutional Services, and submitting an appeal to the Office of

7

the Chief Inspector at ODRC. OAC § 5120-9-31(K)(3). The step three appeal must be filed within fourteen days of the inmate receiving a disposition to his formal complaint. OAC § 5120-9-31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. OAC § 5120-9-31(K)(3). Decisions of the Chief Inspector are final – meaning the Ohio Administrative Code provides no further means for appeal. OAC § 5120-9-31(K)(3).

### 2. Plaintiff's Non-compliance with the Grievance Procedure

Defendant seeks judgment as a matter of law based upon Plaintiff's failure to timely exhaust his administrative remedies within the prison grievance system before filing suit in this Court. Defendant does not deny that Plaintiff properly exhausted his administrative remedies at the first and second steps of Ohio's three-step process, but argues that Plaintiff's appeal at step three was untimely.

Plaintiff's complaint alleges that he sustained the injury at issue on February 24, 2011, and met with Defendant McWeeney on March 8, 2011. (Doc. 1). Plaintiff did not file his first informal complaint until March 30, 2011, (Doc. 54-2 at 1), nearly five (5) weeks after his alleged injury and a full three (3) weeks after seeing Defendant McWeeney. However, Deputy Warden J. Schweitzer issued a timely response to Plaintiff's informal complaint without asserting a timeliness defense, (*id.*), and thus waived any initial procedural irregularity.

On April 11, 2011, Plaintiff timely filed a Notification of Grievance (NOG), step two of the inmate grievance procedure. (Doc. 54-2 at 2). On April 19, 2011, Plaintiff's grievance was timely denied. (Doc. 54-2 at 3).

The final step of the inmate grievance procedure is the filing of an appeal to the Office of the Chief Inspector within fourteen (14) calendar days of the date of the disposition of grievance. OAC § 5120-9-31(K)(3). On July 5, 2011, over twelve (12) weeks after disposition/denial of his step two grievance, Plaintiff filed an appeal to the Chief Inspector. (Doc. 52-4 at 4). On August 7, 2011, a decision was timely issued by Assistant Chief Inspector Mona Parks, R.N., on behalf of the Chief Inspector. (Doc. 54-2 at 5). After a brief recitation of the procedural background of Plaintiff's grievance, but before reaching the merits of the grievance, Parks acknowledged Plaintiff's failure to comply with the inmate grievance procedure. (*Id.*). Specifically, the Decision states: "In your Appeal to the Chief Inspector filed 7-15-11 you make the same complaint. Your response from the inspector is dated 4-19-11, and so your appeal is outside the guidelines for the inmate grievance procedure…" (*Id.*). Having documented Plaintiff's lack of timeliness, Parks opted to "complete a cursory review" of Plaintiff's grievance "due to the medical nature." (*Id.*). Assistant Chief Inspector Parks ultimately concluded "that the medical staff at [LeCI] [was] giving [Plaintiff] the proper care within the ODRC guidelines." (*Id.*).

In his motion for summary judgment, Defendant contends that he is entitled to judgment based upon Plaintiff's untimely appeal despite the Chief Inspector's decision to reach the merits of that appeal. (Doc. 54). In *Vandiver v. Corr. Med. Servs.*, 326 F. App'x 885, 889 (6th Cir. 2009), the Sixth Circuit upheld the dismissal of the plaintiff-inmate's claims for failure to exhaust administrative remedies where the final administrative "denial concluded both that the grievance was not filed timely and that [the] plaintiff had received appropriate medical care." The Sixth Circuit explained that

9

"[w]here the grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust under *Woodford*." *Id.* at 889. *See also Grear v. Gelabert*, No. 07-CV-203, 2008 WL 474098, at *2, n. 1 (W.D. Mich. Feb. 15, 2008) ("A state is, of course, always free to reject a grievance both for failure to properly comply with available procedures *and* on the merits. . . . As long as the 'procedural default' rejection is clear, a subsequent 42 U.S.C. § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust."); *Hall v. Raja*, No. 09-10933, 2010 WL 3070141, at *2 (E.D. Mich. Aug. 2, 2010) ("As the Sixth Circuit recently recognized, a prison may properly preserve its right to subsequently seek dismissal of a prisoner's federal lawsuit for failure to exhaust, where it both denies the grievance on the merits *and* denies it for failure to comply with 'critical grievance procedures.'" (quoting *Vandiver*, 326 F. App'x at 889)); *Norris v. Warren County Reg'l Jail*, No. 1:11-CV-P155-M, 2012 WL 1637074, at *3 (W.D. Ky. May 9, 2012) (holding that "dismissal of a subsequent civil action for failure to properly exhaust is appropriate" where the "prison concluded that [the plaintiff] did not appeal timely and only, alternatively, informed [the plaintiff] that his appeal would have been denied on the merits had it been timely"). *But contrast Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)(holding, in case where the procedural default was "overlooked (or perhaps [forgiven])," that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." )

Here, the Chief Inspector's decision made plain that the decision was a denial alternatively for failure to properly exhaust administrative remedies, and on the merits.

Because the timeliness defect of Plaintiff's appeal to the Office of the Chief Inspector was not waived by prison officials, Plaintiff has failed to properly exhaust his administrative remedies in accordance with OAC § 5120-9-31 as required by 42 U.S.C. § 1997(e)(a). Plaintiff has presented no evidence to excuse his failure to properly comply with the grievance process. In fact, Plaintiff sought and was granted a significant extension of time in which to file a response to Defendant's motion for summary judgment, but chose to file no response at all. Accordingly, summary judgment should be granted in favor of Defendant McWeeney.

### C. Defendant's Motion to Dismiss

Recently, Defendant filed a separate motion to dismiss, arguing that Plaintiff's failure to respond to the pending motion for summary judgment amounts to a failure to prosecute under Rule 41(b), and that summary judgment should be granted under Rule 56(e)(3). In connection with the argument that Plaintiff has failed to prosecute, Defendant points out that Plaintiff was transferred from LeCI to Mansfield Correctional Institution after the motion for summary judgment was served on him last October, but that Plaintiff has never apprised this Court of his current address. Although the time for the filing of a response to Defendant's motion to dismiss has not yet expired, the undersigned finds no need to resolve that motion in light of the recommended disposition of Defendant's motion for summary judgment.

### III. Conclusion and Recommendation

For the reasons explained above, **IT IS RECOMMENDED:**

1. That Defendant's motion for summary judgment, (Doc. 54), be **GRANTED**, that Plaintiff's claims be dismissed, and that this case be closed;

11

2. That Defendant's motion to dismiss (Doc. 59) be **DENIED as moot**; and

3. That the record be corrected to reflect Plaintiff's current address at the Mansfield Correctional Institution, P.O. Box 788, 1150 North Main Street, Mansfield, Ohio 44901.  (*See* Doc. 59 at 4).

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| PAUL W. THATCHER, JR., | Case No. 1:12-cv-470 |
| Plaintiff, | Weber, J.<br>Bowman, M.J. |
| v. | |
| WARDEN, LEBANON CORRECTIONAL INSTITUTION, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).